Filed 12/5/25  P. v. Kaiser CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JOSHUA ADAM KAISER, Defendant and Appellant. | D086919 (Super. Ct. No. FMB23000480) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Rasheed S. Alexander, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Joshua Adam Kaiser of two counts of attempted murder (Pen. Code,[1] §§ 664, subd. (a) & 187, subd. (a)) as to A.R. and

---

[1]    Undesignated statutory references are to the Penal Code.

Jane Doe with allegations that Kaiser personally inflicted great bodily injury upon A.R. (§ 12022.7, subd. (a)) and Jane Doe (§ 12022.7, subd. (e)); two counts of arson causing great bodily injury (§ 451, subd. (a)); one count of domestic violence involving Jane Doe (§ 273.5, subd. (a)); and an allegation that Kaiser personally inflicted great bodily injury upon Jane Doe under circumstances involving domestic violence (§ 12022.7, subd. (e)). The jury also found true allegations that in the commission of the offenses, Kaiser used a deadly and dangerous weapon (§ 12022, subd. (b)(1)). In bifurcated proceedings, the trial court found true that Kaiser had one prior strike (§§ 1170.12, subd. (a)–(d) & 667, subd. (b)–(i)), and aggravating factors (§ 1170, subd. (b)(2)). The court sentenced Kaiser to an aggregate prison term of 20 years plus 28 years to life. Kaiser timely appealed.

Kaiser asserts the trial court prejudicially erred by not allowing him to cross-examine the victims as to their drug use. Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Incident*

On June 18, 2023, A.R. was helping Kaiser and his mother, Sherry, clean up around their home, including towing an RV off the property. Several other people were present on the property, including Doe who shares two children with Kaiser. Doe approached A.R. and asked whether she could sit by him until Kaiser left because they had been fighting and Kaiser had been physical with her in the past. At approximately 4:00 p.m., Kaiser and his mother left to get gas for the generator. Around the same time, A.R. realized his cell phone and truck battery were dead.

At approximately 10:00 p.m., Kaiser and his mother returned with gas for the generator. A.R. and Doe were sitting in A.R.'s truck waiting for

2

Kaiser and his mother to return. Kaiser approached the truck yelling for Doe to get out. A.R. encouraged Doe to get out and talk to Kaiser, telling her he would not let Kaiser beat her. When Doe did not exit the vehicle, Kaiser yelled, "You ain't going to like what happens next," and walked toward the house.

A.R. remained seated in the driver's seat of his truck with the door propped open. Doe was standing outside of the truck with the passenger door open. Kaiser walked toward the driver's side of the truck, threw acetone on A.R., lit a match, and threw it on A.R. A.R. "burst into flames," jumped out of the passenger side door, and attempted to put out the fire by rolling on the ground. As he jumped out of the truck, A.R. "ran into" Doe and lit the truck and Doe on fire in the process. While A.R. rolled on the ground, he could hear Kaiser yelling obscenities while throwing rocks at A.R. Doe ran in the opposite direction of A.R. as she tried to put her fire out. A.R. continued to roll on the ground and had almost put the fire out when he saw and felt Kaiser splash gasoline on him. A.R. ran away from Kaiser, jumped into a bush, and put his fire out. A.R. heard Kaiser's dirt bike driving off.

A.R. walked back to the house and pleaded for help. A friend of Sherry called 911 and took A.R. to meet the ambulance. Sherry took Doe to her mother's home. Doe's fiancé drove her to the hospital.

A.R. sustained burns to 87 percent of his body and underwent two surgeries. Doe sustained burns to the left side of her body and face.

B. *Testimony*

A.R. testified he met Kaiser several months before the incident when he helped Kaiser with his dirt bike on the side of the road and sometime later they rode dirt bikes together.

During cross-examination, defense counsel asked A.R. whether he "struggle[d] with drug addiction." A.R. responded, "Not anymore." A.R could not recall how long he had been sober. He explained that at the time of the incident in June 2023, he was sober because he "was working every day and had a job." Defense counsel asked A.R. whether it would surprise him "to discover that there was a large amount of methamphetamines found in [his] system." A.R. stated it "would be something new to [him]." The prosecution objected to the questioning as "beyond the scope of direct, and . . . improper." The court sustained the prosecution's objection without prejudice.

In an in-chambers conference, the court informed the parties that the alleged drug use was relevant only if A.R. was "allegedly under the influence and that affected his ability to perceive what transpired on the date in question." The court asked defense counsel whether he had "any information that [the alleged drug use] was not for medical purposes." Defense counsel highlighted the quantity found in A.R.'s urine, "over a thousand nanograms per million liter," arguing "[he's] a known drug addict" and "this is an area I think I should be able to explore." The prosecution countered that "a thousand nanograms would be a tiny amount" and they "need a foundation of what drugs were administered by the lifesaving medical personal versus reckless or elicit." The court clarified that A.R. was subject to recall if defense could provide "scientific expert testimony" to support the allegation there were illegal substances in A.R.'s system and whether they affected his ability to perceive what happened to him.

As the trial continued, defense counsel renewed his request to impeach A.R. regarding alleged drug use on or around the date of the incident. He additionally requested to impeach or question Doe on her drug use. Defense counsel emphasized their possible denials of drug use would attack their

4

credibility and if they were under the influence the night of the incident, it "could affect their ability to see, perceive, hear, and recall the events of that evening." Defense counsel did not have any reports from an expert witness to support his reading of the medical reports.

The prosecution again objected to this line of questioning noting that the medical records included a lab collection of A.R.'s urine taken after he had been in the care of medical staff for "about six and a half hours." The prosecution further argued the medical records included a long list of drugs given or prescribed to A.R., including Propranolol which "routinely shows up as an amphetamine class, especially in urine samples." The prosecution emphasized there was no notice of any expert who would lay the foundation of the correlation between impairment and urine sample for either victim. The prosecution did not object to defense counsel asking the victims about their drug use but found it unreasonable to get "into the weeds of medical records without some sort of chain of custody initially and . . . expert witness." The court explained that the defense's line of questioning regarding impairment and perception is not probative because there was nothing to suggest that identification was at issue. The court did allow defense counsel to ask Doe whether she was high on the day of the incident or whether it affected her perception. Both parties submitted on the issue.

Doe testified she has known Kaiser since she was 13 years old and has two children with him. During cross-examination of Doe, defense counsel asked her, "You didn't have any illegal substances that day?" Doe responded, "Not that I recall, no." Defense counsel did not ask Doe any further questions about her alleged drug use.

C.    *Evidence Code Section 402 Hearing*

The defense subpoenaed the trauma surgeon who treated A.R. and Doe to address the issue of amphetamines in their urine samples.  The court held an Evidence Code section 402 hearing on the limited issue of whether the victims "had controlled substances in their system such that it could arguably impair their ability to perceive the events to which they testified to."  The doctor testified he was "not familiar with the quantification of the drugs on the [screening test]," explaining he "look[s] for positive or negative."  During cross-examination, the doctor agreed with the prosecution's statement that he did not have any information that would correlate an amount of amphetamine to a level of impairment.  The doctor also agreed it "is possible somebody could have used methamphetamine two or three days ago and a urinalysis [would] still show positive."  The doctor further testified that drugs such as Adderall can test positive for amphetamines.

Defense counsel argued he should be allowed to recall both victims and impeach them with the medical records showing positive test results for amphetamines.  The prosecution objected, highlighting the "teeny tiny amounts" of amphetamines present in the urine samples, the doctor's inability to "opine in any way about potential impairment," and the possibility that prescription drugs could "provide a false positive as to amphetamines."  The prosecution argued the evidence was consistent with the victims' testimony denying drug use the day of the incident.

The court ruled there was not sufficient foundation to have the doctor testify that either victim was under the influence of amphetamines such that their ability to perceive what they testified to was impaired or that they erroneously identified Kaiser.

A jury convicted Kaiser on all counts and found true all allegations and aggravating factors. The trial court sentenced Kaiser to an aggregate prison term of 20 years plus 28 years to life.

DISCUSSION

Kaiser asserts the court prejudicially erred by limiting his cross-examination of the victims as to their alleged drug use at the time of the incident.

A. *Legal Principles*

"As a general matter, the '[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense.' " (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102–1103.) "Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense." (*Id.* at p. 1103.) Under state law, "only relevant evidence is admissible" and trial courts are vested with broad discretion to determine relevance. (*People v. Kelly* (1992) 1 Cal.4th 495, 523.) "[C]ollateral matters are admissible for impeachment purposes . . . ." (*People v. Lavergne* (1971) 4 Cal.3d 735, 742 (*Lavergne*).) However, "the collateral character of the evidence reduces its probative value." (*Ibid.*) Under Evidence Code section 352, evidence is inadmissible if its probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

"Evidence of a witness's drug use is inadmissible unless the testimony 'tends to show that the witness was under the influence thereof either (1) while testifying, or (2) when the facts to which he testified occurred, or (3)

that his [or her] mental faculties were impaired by the use of such narcotics.' " (*People v. Panah* (2005) 35 Cal.4th 395, 478 (*Panah*).)

"The court's ruling will not be disturbed unless made 'in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Powell* (2018) 6 Cal.5th 136, 162.)  A " 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  On appeal, we presume the evidentiary ruling is correct and Kaiser bears the burden of demonstrating error. (*People v. Giordano* (2007) 42 Cal.4th 644, 666; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1139–1140.)

B.    *Analysis*

The trial court did not abuse its broad discretion by denying Kaiser's request to cross-examine the victims on their drug use.  In making its ruling after the Evidence Code section 402 hearing, the court explained there "just isn't enough" to impeach the victims on their alleged drug use, and there was "nothing about [the victims'] testimony that indicated that their impairment, even if one were to believe they were impaired, was such that any reasonable trier of fact would come to the conclusion that they got the identification wrong."  Doe knew Kaiser since she was 13 years old and shared two kids with him while A.R. had socialized with Kaiser earlier that year.  Nothing in the record indicates that Doe or A.R. misidentified Kaiser.  Even after the doctor's testimony, defense counsel was unable to establish that the medical records and testimony he sought to impeach the witnesses with tended to show they were under the influence or impaired when the incident occurred.

8

Thus, defense counsel was seeking to offer evidence of collateral impeaching facts. (*People v. Contreras* (2013) 58 Cal.4th 123, 152 ["a matter is 'collateral' if it has no logical bearing on any material, disputed issue"].) Kaiser failed to establish the foundational prerequisites for eliciting testimony on the victims' alleged drug use, and the trial court properly excluded that line of questioning. (*Panah, supra*, 35 Cal.4th at p. 478.)

Moreover, it is improper to elicit otherwise irrelevant testimony on cross-examination merely for the purpose of contradicting it. (*Lavergne, supra*, 4 Cal.3d at p. 744 ["A party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted."].) Defense counsel argued he should be allowed to "recall both alleged victims and impeach them with [the] medical records." Because defense counsel's aim was not to establish that the victims were drug users, but rather that the jury should disbelieve their testimony, the trial court's ruling was proper.

To the extent Kaiser contends the exclusion of impeachment evidence violated his right to confrontation and to due process under the California and United States Constitutions, we find no error. The constitutional right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility. (*People v. Quartermain* (1997) 16 Cal.4th 600, 623.) However, the right to confront and to cross-examine is not absolute. (*People v. Brown* (2003) 31 Cal.4th 518, 538.) Trial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, repetitiveness, prejudice, and confusion of the issues. (*People v. Dalton* (2019) 7 Cal.5th 166, 217.) Exclusion of impeaching evidence on collateral matters which has only slight probative value on the issue of credibility does not infringe on the right to confrontation. (*Ibid.*)

Here, the trial court issued a subpoena to compel the trauma surgeon to appear and address the presence of amphetamines in the victims' medical records. It then allowed counsel the opportunity to present evidence and argument at the Evidence Code section 402 hearing. As noted above, the evidence did not establish that either A.R. or Doe were impaired by illegal substances on the date in question. Given the lack of clarity as to what the records showed and the tangential nature of the testimony, the court was well within its discretion to exclude the evidence. Furthermore, although the court ultimately did not authorize introduction of the hospital records and medical testimony at trial, it did grant Kaiser partial relief by allowing defense counsel to ask Doe whether she was high on the day of the incident and whether it affected her perception. On this record, we find no violation of Kaiser's rights to confront and cross-examine the victims. (See *People v. Jennings* (1991) 53 Cal.3d 334, 372 [when the evidence "would impeach [a] witness[ ] on collateral matters and [is] only slightly probative of [her] veracity, application of Evidence Code section 352 to exclude the evidence [does] not infringe defendant's constitutional right to confront the witnesses against him"]; *People v. Henriquez* (2017) 4 Cal.5th 1, 29 [" 'The "routine application of state evidentiary law does not implicate [a] defendant's constitutional rights." ' "].)

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.*

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.

_____

\* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.